UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CALDWELL TANKS, INC.                                        PLAINTIFF

v.                                                  No. 3:19-cv-927-BJB

ALELCO, INC., ET AL.                                      DEFENDANTS

* * * * *

MEMORANDUM OPINION & ORDER

Caldwell Tank, Inc. sued Alelco, Inc. for breach-of-contract, unjust enrichment, and fraud related to Alelco's electrical-subcontracting work on elevated water tanks in Oklahoma.  Amended Complaint (DN 32).  After the suit began, Alelco filed Articles of Dissolution in Missouri and Caldwell moved to amend its complaint.  Motion to Amend (DN 15).  The amended complaint added Alelco's President, Charles Baysinger, to the fraud claim and included shareholder liability claims against Baysinger and Alelco's Secretary, Chad Bristol, to ensure recovery after the company was dissolved.  Am. Compl. ¶¶ 59–71.  Alelco opposed the amendment because, in part, it believed its shareholders could not be sued for actions taken on behalf of the company.  Alelco Opposition Brief (DN 16) at 5.  This Court disagreed, allowing the amendment because company agents can be held liable for intentional torts such as fraud.  *Caldwell Tanks, Inc. v. Alelco, Inc.*, No. 3:19-cv-927, 2021 WL 6064022, at *2 (W.D. Ky. Dec. 22, 2021).

But the Alelco Defendants still want to keep the shareholders out of this suit. So they moved to dismiss the shareholders for lack of personal jurisdiction on the ground that neither transacted any business in or had sufficient minimum contacts with the Commonwealth.  Motion to Dismiss (DN 40-1) at 5–7.  Caldwell counters that both shareholders consented to jurisdiction by signing subcontracts with forum-selection clauses designating Kentucky as the forum for any disputes relating to the subcontracts.  Caldwell is correct.  So the Court denies the motion to dismiss (DN 40).

* * *

In order for a federal court to assert personal jurisdiction over a defendant, the requirements of the "forum state's long-arm statute and the due process requirements of the Constitution must be met."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (quotation omitted).  The plaintiff "bears the burden of establishing the existence of personal jurisdiction."  *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016).  A federal court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Serras v. First Tenn. Bank Ass'n*,

875 F.2d 1212, 1214 (6th Cir. 1989) (quotation omitted).  Even if a court relies on the written submissions, the plaintiff "must set forth, by affidavit or otherwise, ... specific facts" that, viewed in the light most favorable to the plaintiff, make out a prima facie case of jurisdiction.  *Id.* (quotation omitted).  This is not a high bar.  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

One way a plaintiff can prove personal jurisdiction is through a valid, enforceable forum-selection clause that encompasses the relevant claims and binds the defendants.  *Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, No. 1:21-cv-286, 2022 WL 488969, at *4 (S.D. Ohio Feb. 17, 2022).  This is because personal jurisdiction is waivable.  *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006).  And forum-selection clauses are "one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court."  *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

Both subcontracts at issue here indisputably contain valid forum-selection clauses designating this court as the forum for any related controversies. Subcontracts (DN 7-1) ¶ 30; (DN 7-2) ¶ 30.[1]  And Baysinger signed both contracts on behalf of Alelco.  Subcontracts at p. 15.  The original claims allege Alelco breached, was unjustly enriched by, and engaged in fraud related to these subcontracts.  Am. Compl. ¶¶ 10–13, 45–50, 52–56, 58–65.  The amended complaint added Baysinger to the fraud claim, alleging that he materially misrepresented Alelco's work related to the subcontracts.  ¶¶ 58–65.  And after Alelco was dissolved, the amended complaint added "shareholder liability" under MO. REV. STAT. § 351.482 in order to recover any damages that Alelco caused from its dispersed liquidated assets.  ¶¶ 66–71.  So any shareholder liability would stem from the other claims, all of which relate to the subcontracts.

The Alelco Defendants argue, however, that the forum-selection clause does not encompass the claims in Caldwell's amended complaint in two ways.  First, Baysinger signed *on behalf of Alelco*, so he is not personally bound in his personal capacity as a shareholder.  Reply (DN 47) at 4–5.  Nor is Bristol, they contend, because he didn't even sign the original subcontracts.  *Id.*  Second, the forum-selection clause wouldn't include the shareholder-liability claims given that the company was dissolved a year later in Missouri.  *Id.* at 6.

Both contentions are incorrect.

---

[1] The forum-selection clauses read "CHOICE OF FORUM.  The parties hereby explicitly agree that any arbitration, suit or litigation arising from this Agreement shall be maintained in Jefferson County, Kentucky or in the United States District Court for the Western District of Kentucky at Louisville, or the location of the Project, at the Contractor's sole option." Subcontracts ¶ 30.

1. **Subcontract signatures.**  Even assuming Baysinger and Bristol did not sign the subcontracts in their individual capacities, they could still be bound by the forum-selection clauses in those subcontracts.  This is because "a non-signatory to a contract may be bound by a forum-selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound."  *G.C. Franchising Sys., Inc. v. Kelly*, No. 1:19-cv-49, 2021 WL 1209263, at *3 (S.D. Ohio Mar. 31, 2021) (quoting *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997)); *Washburn v. Garner*, No. 5:04-cv-228, 2005 WL 1907530, at *11 (W.D. Ky. Aug. 10, 2005).  This rule takes a "common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause."  *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010).  Such a determination is left to a district court's reasonable discretion.  *Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, No. 1:21-cv-286, 2022 WL 488969, at *5 (S.D. Ohio Feb. 17, 2022).

Employing this framework, courts have routinely found "shareholders, officers, and directors of a corporation" to be bound by forum selection clauses contained in the corporation's contracts.  *Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008).[2]  One district court, for instance, ruled that a small company's "manager, president, owner, and shareholder" was bound by a forum-selection clause she signed on behalf of the company because "[a]s a business with only six employees, it is expected that the president, administrative manager, owner, and shareholder of the business would be closely related to all business activities."  *Mike Albert*, 2022 WL 488969, at *6 (collecting cases).  The court also found that a managing partner who consistently communicated with the plaintiff was bound even though he was not an owner or shareholder.  *Id.* at *7.

Baysinger and Bristol are admittedly "the principal owners, shareholders, and officers of Alelco."  MTD at 2.  And Baysinger signed the subcontracts on behalf of Alelco as its president.  Subcontracts at p. 15; *cf. G.C. Franchising Sys.*, 2021 WL 1209263, at *3 (sole owner's signature bound company).  This is likely sufficient for both shareholders to be "closely related" to the current dispute in light of the precedents mentioned above.  *See, e.g., Mike Albert*, 2022 WL 488969, at *6.

---

[2] *See also H.H. Franchising Sys., Inc. v. Brooker-Gardner*, No. 1:14-cv-651, 2015 WL 4464774, at *4–5 (S.D. Ohio July 21, 2015) (new owners and assignees were bound by previous forum-selection clause); *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757–58 (8th Cir. 2001) (a "shareholder, officer, and director" is "without question, 'closely related'"); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (director who executed agreement on affiliates behalf was bound and so was the owner of the affiliates in light of consistent "Delaware cases in which affiliates, officers, and directors have been held to be bound by forum-selection clauses"); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (forum-selection clause bound directors, not just the company).

But wait—there's more!  Both shareholders took an active role in the subcontract negotiation and performance that resulted in this suit.  From the time Caldwell sought bids for its project through the project's completion under the subcontracts, Baysinger and Bristol consistently communicated with Caldwell employees in Kentucky about the project.  *See* MTD at 5; Gallagher Affidavit (DN 43-8) ¶ 5; DN 43-5 (emails involving Baysinger, Bristol, and the subcontracts); DN 43-2 (project timeline from Bristol); *Mike Albert*, 2022 WL 488969, at *6–7 (repeated communications made it reasonably foreseeable that non-owner would be bound). Bristol sent a quote to Caldwell for the project.  DN 43-3.  And Baysinger traveled to Caldwell in Kentucky to discuss the project.  Gallagher Aff. ¶ 3.

The defendants were also involved in the allegedly fraudulent actions at issue in this lawsuit.  Baysinger signed pay applications, which Caldwell says were fraudulent, for work conducted under these subcontracts. DN 7-5; Am. Compl. ¶¶ 33–35, 60.  Similarly, Bristol executed a subcontract change order that Caldwell alleges was fraudulent.  Change Orders (DN 43-1); Am. Compl. ¶¶ 29–32, 59.  These allegedly fraudulent acts are related to the subcontracts that contain the forum-selections clauses and form the basis of the fraud claim against Baysinger.  Am. Compl. ¶¶ 58-65.

Based on these pleadings and attachments, both Baysinger and Bristol were "'closely related' to the dispute" in a manner that made it "foreseeable" that they would be bound by the forum-selection clauses.  *G.C. Franchising Sys.*, 2021 WL 1209263, at *3.  This is enough to read the forum-selection clauses to cover Baysinger and Bristol.  The court may exercise personal jurisdiction over them on this basis.[3]

**2. Shareholder-liability claims.**  The Alelco Defendants contend that even if Baysinger and Bristol are subject to personal jurisdiction for the subcontracts, this consent would not extend to shareholder-liability claims stemming from the dissolution of Alelco a year later under Missouri law.  Reply at 6.[4]  These claims,

---

[3] The parties also debate whether this court, consistent with Kentucky's long-arm statute and the federal Due Process Clause, could exercise personal jurisdiction over Baysinger and Bristol even setting aside the forum-selection clauses.  MTD at 4–8; Response (DN 43) at 8–12.  Caldwell points to several factors it contends supply the relevant minimum contacts between the individual Defendants and the Commonwealth.  Many of those connections are persuasive, as a matter of due process, for reasons similar to those that support applying the forum-selection clause to Baysinger and Bristol.  But the Court needn't answer the minimum-contacts question given the conclusion that the forum-selection clauses covered them, supplying that independent basis for personal jurisdiction.  And in any event, if either Defendant had minimum contacts with Kentucky in relation to this suit, they would almost certainly be bound by the forum-selection clause as well.

[4] The Alelco Defendants also briefly argue that the shareholder claims are not included in the forum-selection clause because the separate choice-of-law clause says Kentucky law will govern, whereas the shareholder claims are brought under Missouri Law.  Reply at 6.

however, are directly related to Caldwell's other claims and thus encompassed by the forum-selection clauses.

After the suit began, Alelco filed Articles of Dissolution in Missouri, leading Caldwell to amend its complaint. Motion to Amend. Caldwell added shareholder-liability claims against Baysinger and Bristol under MO. REV. STAT. § 351.482 as a way to recover damages from Alelco's remaining assets that may have been distributed to its shareholders. *Id.* at 2; Am. Compl. ¶¶ 66–71. Alelco argued that the statute only allowed for recovery from the corporation *or* the shareholders, not both. *Caldwell Tanks*, 2021 WL 6064022, at *2. This Court disagreed, ruling that the law allowed recovery from both because "[o]therwise, a company could shield up to half of its assets by splitting them between its shell and its shareholders before requiring unfortunate claimants to choose one target or the other." *Id.* In coming to this conclusion, this Court noted that the "statute does not appear to create new liabilities, but rather allows existing 'claims against the corporation' to proceed against the dissolved corporation's assets, whether owned by the dissolved company or its shareholders." *Id.* at *2 n.*. Indeed, MO. REV. STAT. § 351.482 is a corporate-survival statute that allows "any rights or claims existing or any liability incurred prior to dissolution" to survive for two years and be "pursued against the corporation, its directors or shareholders." *Groh v. N. Kansas City Dev. Co.*, 778 S.W.2d 31, 31 (Mo. Ct. App. 1989) (interpreting predecessor statute, MO. REV. STAT. § 351.565).

The Missouri statute doesn't give rise to new causes of action against the shareholders; it merely allows a claimant to recover for its claims against a company from the company's former assets, even if those assets "have been distributed in liquidation" to the shareholders. MO. REV. STAT. § 351.482(4)(2). The law does not create new personal liability on behalf of the shareholders. *LaFountain v. Webb Indus. Corp.*, 759 F. Supp. 236, 242 (E.D. Pa. 1991), aff'd, 951 F.2d 544 (3d Cir. 1991) (MO. REV. STAT. § 351.565 does not extend to personal claims against shareholders, but only claims against the dissolved company). This is why "a shareholder's total liability for all claims pursuant to this section may not exceed the total amount of assets distributed to the shareholder." MO. REV. STAT. § 351.482(4)(2). The law is premised on pre-existing claims against the now-dissolved company. *Gassert v. Com. Mechanisms, Inc.*, 277 N.W.2d 392, 394 (Minn. 1979) (MO. REV. STAT. § 351.565 allows claims that occurred after dissolution only when the acts giving rise to the claim occurred before dissolution).

---

But choice of forum and choice of law are two separate questions. The choice of this Court as the forum means the parties consented to personal jurisdiction for any claims related to the subcontracts. What law applies is another matter, even if the contract addresses both. If the use of Missouri law contradicted the contract, the proper vehicle to raise that issue would be a motion to dismiss for failure to state a claim. But even assuming Kentucky instead of Missouri substantive law applied, the Kentucky corporate-survival statute appears nearly identical to Missouri's. KRS § 271B.14-070.

Assume, for example, that a plaintiff has a breach of contract claim against a company for $20. That company then dissolves and distributes its remaining $20 in assets equally to its two shareholders. The claimant is not out of luck. They can recover $10 from each shareholder based on the claim against the company. But they cannot recover any more than $10 from each (at least not based on this statute) and no separate statutory claim runs against the shareholders that wouldn't have run against the company if it hadn't dissolved and transferred assets to its shareholders.

The same is true here. Caldwell seeks to recover for its claims against Alelco, even if damages must come out of Alelco's assets distributed to Baysinger and Bristol. That recovery is premised on the breach, unjust enrichment, and fraud claims against the company—the same claims that form the basis of the forum-selection analysis above. The shareholder-liability claims are just a means of recovering for those same claims. So to the extent the underlying claims fall within the ambit of the forum-selection clauses, so too do the shareholder-liability claims. So personal jurisdiction exists over these claims as well.

## ORDER

The Court denies the Defendants' motion to dismiss for lack of personal jurisdiction (DN 40).

Benjamin Beaton, District Judge
United States District Court

July 20, 2022

6